WILLIAM T. NIX, Appellant, v. GULF, MOBILE & OHIO RAILROAD COMPANY, a Corporation, and KANSAS CITY TERMINAL RAILWAY COMPANY, a Corporation, Respondents, No. 41980—240 S. W. (2d) 709.

Division One, April 9, 1951.

Motion for Rehearing or to Modify Opinion or to Transfer to Banc Overruled in Opinion Filed, June 11, 1951.

Opinion on Motion for Rehearing Modified, June 21, 1951.

188

*Ben W. Swofford, Robert A. Schroeder, Laurence R. Smith* and *Swofford, Schroeder & Shankland* for appellant.

*Charles M. Miller* for respondent Gulf, Mobile & Ohio Railroad Company.

*Horace F. Blackwell, Jr., John H. Lathrop* and *James F. Walsh* for respondent Kansas City Terminal Railway Company.

LOZIER, C.—This is an action to recover for personal injuries. Plaintiff had a $20,000 verdict against the defendant, Gulf, Mobile & Ohio Railroad Company (hereinafter referred to as the railroad). The jury found in favor of the other defendant, Kansas City Terminal Railway Company (hereinafter referred to as the terminal). The trial court ordered an $8,000 remittitur, which plaintiff refused to enter. The railroad's motion for a new trial was sustained on the ground that the verdict was excessive. This appeal is from that order.

The terminal's motion here to dismiss this appeal as to it, taken with the case, is sustained. Verdict was for plaintiff and against the railroad and for the terminal and against plaintiff. Judgment was entered accordingly. Plaintiff filed no motion for a new trial as to the terminal. The railroad's motion for a new trial was directed against the verdict and judgment as to it, and asked no relief against the judgment in favor of the terminal. Plaintiff appealed only from the order sustaining the ▆▆▆ railroad's motion and the railroad did not appeal from the judgment in favor of the terminal. Thus, the terminal is not a party in this appeal.

It neither appears nor was argued here that plaintiff's right of recovery would be limited to a judgment against the defendants jointly. Compare Cameron v. Howerton, (Mo. Sup.) 174 SW 2d 206. The trial theory of each defendant, as shown by their requested given instructions, respectively, would justify a verdict against its codefendant alone. Granting the railroad a new trial as to it did not necessitate granting a new trial as to the terminal, and the judgment in favor of the terminal was not affected by the sustention of the railroad's motion. 66 CJS, "New Trial," Sec. 12, p. 100; Hunt v. Kansas City, (Mo. App.) 114 SW 2d 153; Fitzpatrick v. Sheppard, 346 Pa. 240, 29 A. 2d 475; and United Retail Cleaners & Tailors Assn. v. Denahan, (D. C. Mun. Ct. of App.) 44 A. 2d 69. See also Grimes v. Red Line Service, 337 Mo. 743, 85 SW 2d 767.

The principal issue is whether the trial court abused its discretion in ordering the remittitur, and, upon plaintiff's refusal to comply, in granting a new trial on the ground of excessiveness of the

verdict. Plaintiff's position, as stated in his brief, is: "Appellant is not unmindful of the general rule that the order of a trial judge with reference to the amount of the verdict will be disturbed upon appeal only where it is shown the trial judge abused his discretion. We strongly urge, however, that this case falls within the classification and the record clearly indicates that the trial judge *did* abuse his discretion by ordering the remittitur."

Before summarizing the evidence, we restate the principles governing an appellate court's review of a trial court's order granting a new trial on the ground that the verdict was either excessive or inadequate. Such an order is the equivalent of the granting of a new trial upon the ground that the verdict is against the weight of the evidence. Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 SW 2d 610; Sofian v. Douglas, 324 Mo. 258, 23 SW 2d 126; Lang v. St. Louis Public Service Co., (Mo. App.) 204 SW 2d 504; O'Shea v. Pattison-McGrath Dental Supplies, 352 Mo. 855, 180 SW 2d 19; and Mitchell v. Pla-Mor, Inc., 361 Mo. 946, 237 SW 2d 189, and Steuernagel v. St. Louis Public Service, 361 Mo. 1066, 238 SW 2d 426, decided concurrently herewith.

In ruling a motion for a new trial, a trial court is vested with a wide discretion. This is particularly important where the motion has been sustained because of the amount of the verdict, or, has been determined after consideration of the weight of the evidence. O'Shea v. Pattison-McGrath Dental Supplies, Lang v. St. Louis Public Service Co., Mitchell v. Pla-Mor, Inc., and Steuernagel v. St. Louis Public Service Co., supra; Moss v. May Department Stores, (Mo. App.) 31 SW 2d 566; Reichmuth v. Adler, 348 Mo. 812, 155 SW 2d 181; and De Maire v. Thompson, 359 Mo. 457, 222 SW 2d 93.

So, while this court has not weighed the evidence relating to plaintiff's disabilities, we have examined the record to determine whether there was substantial evidence to sustain the trial court's view that such disabilities were not as serious or as permanent as claimed or that some of the disabilities did not result from the accident. Riche v. City of St. Joseph, 326 Mo. 691, 32 SW 2d 578; King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 SW 2d 458; Albert H. Hoppe, Inc. v. St. Louis Public Service Co., (Mo. App.) 227 SW 2d 499; Green v. First National Bank of Kansas City, 236 Mo. App. 1257, 163 SW 2d 788; and Esselmann v. Devereux, (Mo. App.) 78 SW 2d 515.

Plaintiff asserts that "in reviewing the matter of damages on appeal, the evidence is viewed in the light most favorable to the plaintiff," citing Osburn v. K. C. Southern Ry. Co., 360 Mo. 813, 230 SW 2d 856. A single sentence in that opinion and a statement in Dodd v. Missouri-Kansas-Texas R. Co., 354 Mo. 1205, 193 SW 2d 905, appear to support plaintiff's contention. However, examination of these two decisions shows that, in both instances, this court reviewed the evi-

dence ▮▮▮ in the light most favorable to sustaining the ruling of the trial court. See Steuernagel v. St. Louis Public Service Co., Murphy v. Kroger Grocery & Baking Co., and Mitchell v. Pla-Mor, Inc., supra.

The rule urged by plaintiff does not apply to an *appellate* court's review of a *trial* court's ruling involving the power of the trial court to weigh the evidence—including that of the amount of damages. Sofian v. Douglas, Murphy v. Kroger Grocery & Baking Co., Lang v. St. Louis Public Service Co., O'Shea v. Pattison-McGrath Dental Supplies, Mitchell v. Pla-Mor, Inc., and Steuernagel v. St. Louis Public Service Co., supra. In the instant case, it is not our duty to consider the evidence in the light most favorable to plaintiff. Our obligation is to determine whether the trial judge, who weighed all the evidence, abused his discretion. In other words, we are not exercising discretion; we are only determining whether the trial judge, in the exercise of *his* discretion, was guilty of an abuse of discretion.

▮▮ Plaintiff, 52 years old at trial time, sustained his injuries on February 16, 1948. He was a railway mail clerk, and was working that evening in a combination mail-baggage car in one of the railroad's trains in the Kansas City Union Station. This train was standing upon tracks, part of the terminal's union station terminal facilities, over which the railroad had been granted the right to operate its (the railroad's) trains. The mail car was near the "head" or east end. Prior to the scheduled departure time, 11 p. m., plaintiff was working in the mail car, near the loading door on the south side of the car, being engaged in loading mail sacks and pouches.

About 11 p. m., a locomotive, owned by the railroad and operated by its employees, backed in on these tracks from the east and coupled onto the train. The coupling was rough and caused the train to lurch and jerk violently. At the moment of impact, plaintiff was facing the open loading door and had just stooped over to pick up a mail pouch on the floor. He was thrown to the east and fell headlong, the left side of his head striking the base of an iron stanchion.

In ruling the issue of the claimed excessiveness of the $20,000 verdict, the trial court was required to weigh all the evidence relating to the nature, extent and cause of plaintiff's injuries. Plaintiff's testimony was that: he was knocked unconscious and remained so for a short time; after regaining consciousness, he was dazed until after the train left the station; he made his usual "run" terminating the next morning at Springfield, Illinois; he made the return run to Kansas City that night; the night of the accident he was not able to do his work properly and lay down part of the time; he had a bump above his left ear; his right arm was "badly jammed up", his back was sore and his neck was stiff; he suffered severe headache that night and the following day; he continued his work as a railway mail clerk until July 13, 1948, but was able to make only about one-half of his runs; he resigned in July, 1948, because he could not do the work

properly; he continued to have severe headaches and at times suffered from blurred vision and dizziness; his back is weak; his right arm does not function properly and he cannot raise it above his head without severe pain; the fingers of his right hand fumble and seem to be "kind of semi-paralyzed"; he lost about 35 pounds in weight and has trouble sleeping; he has not been able to work since July, 1948, or to do gardening or carpenter work around his house.

Plaintiff did not see a physician until approximately a month after the accident when he was examined by a government doctor at the request of the district superintendent of mails. In April, 1948, he was twice examined by Dr. A. L. Skoog. Dr. Skoog examined him a third time in December, 1949, shortly before the trial. In August and September, 1948, he went to a Dr. Zeilinger two or three times and this doctor prescribed rest. On December 9 and 10, 1949, he was examined by Dr. B. A. Poorman. None of the doctors plaintiff consulted and who examined him either took X-ray pictures or prescribed a course of treatment.

Dr. Skoog and Dr. Poorman testified for plaintiff. Dr. Skoog, a specialist in nervous and mental diseases, described his examinations. He found a definite weakness in plaintiff's right hand and forearm; tests showed a decline in "motor power," especially on the right side; all of the deep reflexes were increased; and there was impaired sensation on the right side of the right arm from the shoulder down. Dr. Skoog's conclusion was that plaintiff "has injury to the brain diffused through all of the cerebrum" and also had suffered "trauma, pulling or concussion of the brachial plexus." Dr. Skoog believed that at the time of his last examination plaintiff had more disability than in April, 1948. In his opinion, plaintiff was not physically able to work and his condition was not only permanent but would get progressively worse.

Dr. Poorman, a general surgeon, examined plaintiff at Dr. Skoog's request. Dr. Poorman testified to these findings: plaintiff had some enlargement of the left frontal part of the head; there was a delicate tremor of the eyelids; the ciliary muscle responded slowly; the right side of the neck and the right shoulder were rigid and under tension; there was limitation of motion in the right shoulder and upper arm, tenderness around the right elbow and loss of grip in the right hand; and the back was stiff and rigid, particularly on the right side. This doctor's conclusion was that plaintiff had: traumatic concussion of the brain; a traumatic condition of the brachial plexus; neuritis of the group of nerves that go to the elbow; fibrosis of the shoulder joint; injury to ligaments around the right elbow; strained and contused muscles and ligaments of the lower back; injury to muscles in the neck region; and injury to the brain cells. In his opinion, all of these conditions were due to injuries suffered in the accident, were permanent and would get progressively worse.

Dr. F. C. Helwig examined plaintiff at the request of the defendants. According to his testimony, he made a complete physical examination, including laboratory and X-ray studies. He found no atrophy of the right arm and shoulder, but did find a definite limitation of motion and awkward movements of the right arm. He found some limitation of motion of the back but no muscle spasm. There was tenderness over the thoracic spine and the right side of the neck. He found plaintiff's teeth in bad condition with extensive caries and pyorrhea. He found no abnormalties of the skull. The reactions and reflexes of the peripheral nerves were normal. The laboratory studies were negative. X-rays showed arthritic changes of the cervical spine, and marked decay of and absorption around the teeth. Dr. Helwig was unable to find any cause for the condition of plaintiff's right arm except the state of his teeth and the arthritic changes in his spine. It was his opinion that all of plaintiff's teeth should be extracted. He felt that plaintiff's teeth could readily have caused the arthritis and he could find no cause for the limitation of motion of the neck and back except the arthritic spinal condition.

Dr. E. H. Trowbridge, Jr., a specialist in neurology, psychiatry and electroencephalography, testified for the defendants. An electroencephalograph recording of plaintiff's brain indicated a normal brain condition.

In brief, plaintiff's evidence tended to show that his disability resulted from the accident. Defendants' evidence tended to show that plaintiff had not sustained permanent injuries to his brain or central nervous system, and that these were normal at trial time; also, that the condition of plaintiff's arm, neck and back was due to his teeth and the resulting spinal arthritis.

Thus, the testimony as to the nature, extent and cause of plaintiff's disability was in sharp conflict. The trial judge weighed all this evidence. He observed plaintiff and the medical experts and heard them testify. We cannot find that he abused his discretion, either in ordering the remittitur or in granting the railroad a new trial. See Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 SW 2d 674, decided concurrently herewith.

The railroad has here urged reasons other than excessiveness of verdict why a new trial should have been granted. We need not consider these matters as it is unlikely that the alleged errors will recur in a new trial against the railroad alone.

However, we may observe that plaintiff's status, as a railway mail clerk assigned to the railroad's train, was that of a passenger. He is entitled to recover for personal injuries received by him "under the same circumstances which would have authorized recovery by an ordinary fare-paying passenger." 13 CJS, "Carriers," Sec. 548, p. 1052; Mellor v. Mo. Pac. R. Co., 105 Mo. 455, 16 SW 849, 10 LRA 36; and Bond v. St. Louis-San Francisco R. Co., 315 Mo. 987,

288 SW 777. His passenger status was not affected by the fact that, when the accident occurred, he was working in a mail car in a train standing in a station. Baltimore & Ohio R. Co. v. Davis, 152 Md. 427, 137 A. 30.

The appeal is dismissed as to the terminal and the order granting a new trial as to the railroad is affirmed. Van Osdol and Aschemeyer, *CC.*, concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.

### ON MOTION FOR REHEARING OR TO MODIFY OPINION

LOZIER, C.—Plaintiff has asked a rehearing or, in the alternate, a modification of the opinion or a transfer to the court en banc. He contends that in this court mere excessiveness can be corrected by remittitur and that, in any event, "where the only error is excessiveness of verdict a retrial should be limited to the issue of damages."

As stated in the opinion, the railroad's motion for new trial and its assignments here involved issues additional to that of excessiveness. Accordingly, disposition of plaintiff's motion requires determination of these other issues. Compare Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 SW 2d 426, wherein, upon motion to modify, the only issue was that of excessiveness.

Upon the assumption that plaintiff's status was not that of a passenger, and that it did not have exclusive control of the train and the engine, the railroad contends that no submissible res ipsa case was made as to it. We have found that plaintiff's status was that of a passenger. And the record does not sustain the railroad's contention that the terminal had exclusive control of the coupling movement. Railroad employees were in charge of the standing railroad-owned cars and were operating the railroad-owned engine. The terminal's evidence was that the railroad engineer ignored the slow and stop signals of the terminal's inspector. The railroad's evidence was that the inspector was not present. Both defendants' evidence was that the custom and practice of making a "safety stop" of the engine, if its crew could not see the inspector, was not observed. Under the railroad's own theory, it had actual, complete and exclusive control of the coupling movement. See Hunt v. N. Y., N. H. & H. R. Co., 212 Mass. 102, 98 NE 787, 40 LRA (NS) 778.

But, says the railroad: there was no joint control by the two defendants; plaintiff's requested Instruction 1 required a finding against both defendants if there was "joint and exclusive management and control of both defendants"; and, therefore, the jury did not follow the instructions. Apparently, it is the railroad's position that plaintiff, having pleaded and submitted a prima facie res ipsa case against both defendants, cannot recover against one defendant alone.

Plaintiff pleaded and offered evidence tending to prove a res ipsa case which, if believed by the jury, made the defendants liable jointly and severally. See 65 CJS, "Negligence," Secs. 102 and 182b, pp. 639, 868; 10 Am. Jur., "Carriers," Sec. 1605, p. 350; and Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 SW 2d 654. Each defendant tried and submitted its case upon the theory of joint control but that plaintiff's injuries were caused by the specific negligence of its codefendant. Plaintiff neither pleaded, nor offered evidence of or instructions relating to, specific alleged negligent acts or omissions of either defendant. Compare Zichler v. St. Louis Public Service Co., supra. That each defendant offered evidence of its codefendant's negligence did not require plaintiff to submit his res ipsa case upon specific negligence. Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 SW 2d 797.

Furthermore, Instruction 2, also submitting plaintiff's case against both defendants, made no reference to control. Instructions 4 and 5 referred to finding the issues "against the defendants, or either of them." Each defendant submitted instructions upon the theory that a verdict could be returned against its codefendant alone; and the jury were so informed by the instruction relating to the form of verdict.

 The railroad complains of two instructions given at the terminal's request. "It is well settled that a defendant will not be heard to complain of an instruction on the ground that it is too favorable to its codefendant, or that it prevented a joint verdict against both. * * * However, this court has very recently held that a defendant can complain of instructions given at the request of a codefendant which affect the question of his liability to plaintiff." Barr v. Nafziger Baking Co., 328 Mo. 423, 41 SW 2d 559. See also: Neal v. Curtis & Co. Mfg. Co., 328 Mo. 289, 41 SW 2d 543, and State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 SW 2d 836.

Instruction A-1 was that if the jury found that the inspector was guiding the engine in, that it was traveling 3 or 4 miles per hour, that he gave the engineer a slow signal when it was 50 or 60 feet away, and a stop signal when it was 12 feet from the train, and the engineer did not stop in response to said stop signal, the terminal was not negligent and that the verdict should be in its favor.

The railroad asserts there was no evidence that the engine could have been stopped in 12 feet. Plaintiff asserts that, while there was no direct evidence of that fact, there was sufficient substantial evidence from which the jury could reasonably infer that the engine could have been stopped within 12 feet. He also suggests that we could judicially notice that the engine, traveling 3 or 4 miles per hour, could have been stopped within that distance by an alert, observing engineer. However, we shall assume that there was no such evidence, and we shall not take such judicial notice.

It was conceded that the engine did not stop. It was the railroad's evidence, and its theory as submitted in its Instruction B, that there was no car inspector present "to signal the diesel engine into the train so the coupling thereof with the east end of the train could be made safely without a violent jar. * * *" Whether or not the engine could have been stopped within 12 feet was not material to the railroad's defense. Contrast Barr v. Nafziger Baking Co., supra. In no way was the railroad's case prejudiced by this instruction.

Nor did Instruction A-1 single out or give undue emphasis to the testimony of the terminal inspector. It was based upon the terminal's evidence and properly submitted the terminal's theory. Borgstede v. Waldbauer, 337 Mo. 1205, 88 SW 2d 373; and Wilson v. Miss Hulling's Cafeterias, 360 Mo. 559, 229 SW 2d 556.

Instruction B-1 told the jury that if they found that the engineer "did not see" the inspector "*south of and adjacent to Track No. 20,* then it was his duty to stop" before coupling; and that if they found that the inspector "was not *on the platform at the head end of the train,*" the engineer was negligent and the verdict must be for the terminal. (Italics ours.)

The record does not sustain the railroad's contention that the italicized words placed the inspector in two different positions. There was no issue as to *where* the inspector was *if* he was present, which he was not, according to the railroad.

Nor does the record sustain the railroad's contention that Instruction B-1 was not justified by the evidence. The instruction hypothesized facts which the railroad itself had placed in evidence. The railroad's case was that, as the engine was backing toward the train, the engineer and fireman, both leaning out of the cab and looking backward, did not see an inspector, and that there was no inspector there. And witnesses for the railroad, as well as those for the terminal, testified that it was the rule, custom and practice to stop if the inspector was not there to "guide them in."

It is not material that Instruction B-1 did not require a finding that the terminal was not negligent. Ordinarily only a plaintiff can complain of such an error. See Barr v. Nafziger Baking Co., supra, and Leighton v. Davis, (Mo. Sup.) 260 SW 986. Contrast Berry v. Kansas City Public Service Co., 341 Mo. 658, 108 SW 2d 98, where one defendant's instruction was the converse of the instruction by which the codefendant submitted its theory. We are unable to see wherein the railroad's defense could have been affected or injured by either Instruction A-1 or B-1.

 We have found that the railroad owed plaintiff the same duty it owed a fare-paying passenger. Accordingly, the railroad's assignment of error in Instructions 1 and 3, requiring of the railroad the highest degree of care and defining that degree, is ruled against the railroad. And, inasmuch as plaintiff made a submissible res ipsa

case against the railroad, the assignment that its motion for a directed verdict should have been sustained is overruled.

Summarizing, we have sustained the railroad's contention that the trial court did not abuse its discretion in ordering a new trial and have overruled the railroad's assignments of error urged in justification for a new trial.

We now return to plaintiff's motion to modify the opinion by remanding the case for purposes of allowing plaintiff to remit or for trial upon the damages issue only. The latter suggestion must be ruled adversely to plaintiff. Plaintiff had his trial and a verdict as to his damages. He refused to remit and appealed from an order in the making of which we have held there was no abuse of discretion. He is in no position now to ask us to remand for trial upon the damages issue alone—upon the very issue upon which plaintiff appealed and the very issue we have decided was properly ruled below. Such a remand would, in effect, render nugatory our decision that the trial court did not err in granting a new trial upon all issues upon plaintiff's failure to remit.

In the alternate remittitur-new trial order here, defendant's motion for new trial was sustained generally. In the order made after refusal to remit excessiveness only was assigned. In Steuernagel v. St. Louis Public Service Co., supra, this court, en banc, held that the new trial is granted by the initial alternate order and not by the subsequent order. And our remand in that case did not limit the new trial to the damages issue, though both the initial and the later order assigned only excessiveness.

Plaintiff cites Wilson v. Kansas City Public Service Co., 354 Mo. 1032, 193 SW 2d 5; Franklin v. Kansas City Public Service Co., 239 Mo. App. 151, 186 SW 2d 546; and Zarisky v. Kansas City Public Service Co., 239 Mo. App. 396, 186 SW 2d 854. In those cases, the cause was remanded for trial on the damages issue alone because the only errors found related to that issue. In the instant case, the only assignment on that issue has been ruled against the party making the assignment, the appealing plaintiff. Moreover, in the cases cited, remittitur was not involved, the appeal was by the defendant, and whether the trial court had abused its discretion in ordering remittitur and a new trial upon failure to remit was not in issue.

Should we allow plaintiff another opportunity to enter the remittitur he refused to enter below? In Steuernagel v. St. Louis Public Service Co., supra, plaintiff refused to remit, new trial was granted on the ground of excessiveness and plaintiff appealed but defendant did not. In that case, defendant did not assign in this court any reason other than excessiveness why its new trial motion should have been sustained. In the instant case, we have found insufficient the other reasons urged by the defendant— thus analogizing

the two cases on this issue. There, as here, we held that the trial court had not abused its discretion. (Compare Dodd v. Missouri-Kansas-Texas R. Co., 354 Mo. 1205, 193 SW 2d 905, wherein it was held that the trial court had abused its discretion.)

In Steuernagel v. St. Louis Public Service Co., supra, this court said that under Sec. 847.140(c), Mo. RSA, Sec. 512.160(3), Mo. RS 1949, it had "authority to direct the judgment that should be entered even though the trial court ordered a new trial," and remanded to allow plaintiff to enter the remittitur ordered by the trial court, otherwise for a new trial on the ground of excessiveness. No reason appears why a similar ruling should not be made in the instant case.

Accordingly, our affirmance of the trial court's order is set aside, and the case is remanded with directions to set aside the order granting a new trial and to allow plaintiff to file a remittitur of $8,000 as of the date of the original judgment, within a time to be fixed by the trial court, and thereupon to enter judgment for plaintiff for $12,000; or if such remittitur is not made, to order a new trial. *Van Osdol, C.,* concurs; *Coil, C.,* not sitting.

PER CURIAM:—The foregoing opinion by Lozier, C., is adopted as the opinion of the court. All the judges concur.