Raymond GRECO, Appellant,

v.

William J. HENDRICKS and Paxton-Gal-
lagher Company, a corporation,
Respondents.

No. 46913.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

Motion for Rehearing or to Transfer to
Court en Banc or to Modify Opinion
Denied Sept. 14, 1959.

Melvin L. Kodas, Billy S. Sparks, Kansas City, for appellant, Langworthy, Matz & Linde, Kansas City, of counsel.

Harold T. VanDyke, Kansas City, for defendants, Davis, Thomson, VanDyke & Fairchild, Kansas City, of counsel.

COIL, Commissioner.

A jury awarded Raymond Greco $32,000 in his action to recover for personal injuries and property damage allegedly sustained as the result of a collision between his automobile and one operated by defendant Hendricks as the agent of defendant Paxton & Gallagher Company. Within the prescribed 90-day period, the trial court overruled defendants' motion to set aside plaintiff's verdict and to enter judgment for defendants, and ordered that "The court finds the verdict to be excessive, therefore: If the plaintiff will remit Twelve Thousand Dollars ($12,000.00) and accrued interest on or before April 7, 1958, from the verdict of the jury heretofore entered herein in the sum of Thirty-Two Thousand Dollars ($32,000.00) the motion of defendants will be *overruled,* otherwise the 'Motion for New Trial' will be *sustained* for the reason 'The verdict is excessive.'" Plaintiff failed to file a remittitur and appealed from the order granting defendants a new trial. He contends the order was void for uncertainty and that consequently the original judgment for plaintiff is in full force and effect and should be affirmed, and, alternatively, that the trial court abused its discretion in granting a new trial on the ground of excessiveness of verdict.

There is no merit in plaintiff's initial contention that the trial court's order of March 25, 1958, was subject to various interpretations and thus so vague and uncertain as to be void and of no effect. Plaintiff says that it is impossible to tell what he was to remit as interest because the language that "If the plaintiff will remit Twelve Thousand Dollars ($12,000.00) and accrued interest on or before April 7, 1958, from the verdict of the jury" etc., may mean the accrued interest on the entire $32,000 or the interest on $12,000.

The trial court's order clearly granted defendants a new trial as of the date of the order on the ground that the verdict was excessive and additionally granted plaintiff the privilege, through remittitur, of retaining that portion of the judgment which the court considered not excessive. Carver v. Missouri-Kansas-Texas R. Co., 362 Mo. 897, 245 S.W.2d 96, 105; Wicker v. Knox Glass Associates, 362 Mo. 614, 242 S.W.2d 566, 568; Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S.W.2d 426, 429 [4]. We think it is clear enough that the court meant interest which had accrued on the $12,000 he was requiring the plaintiff to remit, but, in any event, the language re-

ferring to interest was surplusage because the $32,000 judgment had been set aside and if a remittitur of the principal amount specified had been made, a *new* judgment for $20,000 would have resulted. Thus, it seems clear that no amount of interest was involved.

Furthermore, it is abundantly clear that plaintiff could have defeated defendants' new trial by complying with the remittitur order of the court by entering a remittitur in the exact language of the court's order. In that event, plaintiff would have had a $20,000 judgment as of the date of the original judgment.

About 8:30 p. m. on November 13, 1955, plaintiff, 21 years of age and a member of the United States Air Force stationed at Grandview Air Base near Kansas City, was driving north on U. S. Highway 71 when, at a place about one-fourth mile north of Missouri Highway 150, a southbound car operated by defendant Hendricks swerved into the northbound lane and plaintiff, unable to avoid a collision by swerving, collided with the right rear side of the southbound automobile.

Following the collision plaintiff's back bothered him and he reported to the base infirmary and that night and the next day received heat treatments. The next morning he was examined and X rayed at the base hospital. Plaintiff said that at that time he had pain in the middle of his lower back and his right kneecap bothered him. The doctor prescribed further heat treatment and placed a bandage on his right knee. He continued on duty as motor pool dispatcher, but returned for sick call for the next two or three days and then entered the base hospital where he remained in bed three days and received heat treatments every two or three hours and some medicine for pain. His back was bandaged with adhesive tape and he returned to duty. His back continued to hurt, but his knee was better and apparently gave no further trouble. He returned to the base hospital at intervals for further heat treatments. In De-

cember 1955 he was examined by an orthopedic surgeon in Kansas City. Thereafter he was treated by a general practitioner in Grandview from approximately January to May 1956, who administered heat therapy after reading X rays of him. Plaintiff continued to experience pain in his back and was sent to Fort Leavenworth in February 1956 for a 1-day examination by an orthopedic specialist. In March 1956 he was sent to Scott Air Force Base for examination. He said that by that time he was beginning to experience numbness in his right leg. At Scott he remained in bed for twenty days, was then examined, and an orthopedic belt (canvas with metal stays) was prescribed and he was put on light duty. After returning from Scott Field he again was treated by the physician in Grandview. In the latter part of May 1956 he was sent to Sheperd Air Force Base for two weeks for examination. He was discharged from the Air Force on June 25, 1956—his regular discharge had been scheduled for May 21, 1956, and his discharge was not because of physical disability.

After discharge he returned to his home in Glasgow, New York, where he was treated by his family doctor on ten occasions and then referred to a neurosurgeon in Albany, New York. In the meantime, both before and thereafter, he received about sixty chiropractic treatments and about fifty heat treatments from other doctors. He also entered a veterans' administration hospital in Albany. He said that his back got continuously worse and his right leg was numb on its right side and at times he experienced pain in his right ankle and foot. As a result of his 10-day stay in the veterans' hospital he was awarded "ten per cent disability." By August 1957 (the trial was in January 1958) plaintiff had discontinued treatment by any doctor except one in his home town in New York whom he continued to see every month or two (although he was examined prior to trial by Kansas City doctors). Plaintiff continued self-administered heat treatments two or three times a week.

Plaintiff had entered the Air Force at 19 and had been in prior good health. He had theretofore worked in a dress factory at $35 per week. Since his discharge he had helped in his father's barbershop which was operated on a part-time basis and, in connection therewith, took care of some sort of a recreation room at the rear of the shop. His father paid him $15 a week. He had run errands for a relative and had sold Christmas trees in season. He said that he continued to receive the $15-a-month pension, that his back continues to hurt, he continues to experience numbness in his leg and intermittent pain in his ankle, that walking too much, riding in an elevator, or doing anything which causes a jerk, or bending over to pick up anything causes increased pain in his back. He also said that his back condition had interfered with obtaining a job, both because his back hurt and because people would not give him a job when he mentioned a bad back or a bad leg. He had been in an automobile accident in July 1956 while on his way to treatment for the November 1955 accident when his stopped automobile had been struck in the rear by another automobile causing $131 property damage to his car, but, even though he said his back hurt a little more as a result thereof, he received no additional personal injury in that accident.

Plaintiff had incurred doctor bills of about $375, the damage to his automobile was $1,195, and a disc operation would cost $600.

Extracts from the records of the Veterans' Administration showed that plaintiff had been awarded the ten per cent disability apparently for an aggravation of a congenital condition, viz., the partial sacralization of lumbar vertebra No. 5.

Plaintiff adduced three medical witnesses, an orthopedic surgeon, a neurosurgeon, and the general practitioner who had treated him in Grandview. Inasmuch as the question on this appeal is whether the trial court abused its discretion in holding the $32,000 verdict excessive and in ordering a remittitur in the amount of $12,000, we view the evidence from the standpoint most favorable to the action of the trial court. Consequently it will be unnecessary to state plaintiff's medical evidence in detail.

Suffice to point out that the orthopedic surgeon who examined plaintiff on December 30, 1955, made a diagnosis of soft tissue injury usually called lumbosacral strain or sprain and recommended conservative treatment, i. e., heat, a back support, and pain medicine. He examined plaintiff again on January 15, 1958, and made a diagnosis of nerve pressure irritation due to the protrusion of a ruptured disc at the fifth lumbar level. The doctor's opinion was that the plaintiff would require an operation to eliminate his back pain and to eliminate pressure on the nerve which, if continued long enough, would destroy the nerve. But he thought plaintiff did not have to have an operation immediately if he could "hold off for awhile."

Doctor Doane of Grandview treated plaintiff the first six months of 1956 and had diagnosed his condition as a severe chronic back sprain and had prescribed pain medicine and medicine to relax muscles, and had administered physiotherapy. He examined plaintiff in January 1958 and made a diagnosis of a ruptured disc in the interspace between the fifth lumbar and first sacral vertebrae and recommended an immediate operation before an irreversible change in the impinged nerves occurred.

Doctor Peck, a neurosurgeon in Albany, New York, examined plaintiff in September 1956 and diagnosed his condition as a ruptured intervertebral disc in the lumbar area which had not protruded sufficiently to produce a compression of the components of the sciatic nerve and he, therefore, recommended conservative treatment as opposed to surgical repair. He again examined plaintiff in August 1957 and again diagnosed a ruptured disc with more protrusion but not a complete rupture and he was doubtful whether the disc in question was between the third and fourth or the fourth

and fifth lumbar vertebrae. He thought surgery was not indicated at that time but that plaintiff would need surgery, probably within five years. He thought the disability as a result of the back and the surgery would not necessarily be permanent. Plaintiff was limited in his activities at the time of the examination in 1956 because of back and leg pain. He was unable at that time to do heavy work, and he limped.

Plaintiff's doctors, as well as the doctors who examined for defendants, agreed that plaintiff had a congenital condition which amounted to an enlarged transverse process of the fifth lumbar vertebra which was called a partial sacralization of that vertebra.

Doctor Pickard, who examined plaintiff on January 10, 1958, at the request of defendants, was of the opinion that although plaintiff avoided standing on his right leg and limped on the right leg, those actions were voluntary and that the positive tests for the presence of ruptured intervertebral disc were negative. The doctor agreed, however, that there was a condition between the fourth and fifth lumbar vertebrae which was not normal, apart from and in addition to the congenital architectural abnormality heretofore mentioned. He agreed that the type of back plaintiff had was frequently associated with a ruptured intervertebral disc and that there was some evidence of a ruptured disc which could not be ignored. The doctor was of the opinion, however, that the disability in plaintiff's back, apart from the congenital condition, was a minimal disability, mild in nature, and that his condition did not warrant surgical reconstruction at trial time. The doctor was of the further opinion that, while he could not say for certain whether plaintiff did have a ruptured disc, if he did and an *operation* were performed to remove the disc and to fuse the vertebrae, no permanent occupational disability would result and that by the end of a year thereafter plaintiff could do anything that he could do theretofore.

A radiologist who took X rays at Doctor Pickard's request found that the interspace between the fifth lumbar vertebra and the sacrum was small but normal in a back such as plaintiff's where there was a congenital partial sacralization of the vertebra, and that X rays taken by another in 1955 showed the same interspace between the fifth lumbar and the sacrum as did the 1958 X rays.

The trial court is vested with discretion to order a new trial on the ground of excessiveness and such an order is equivalent to granting a new trial on the ground that the verdict is against the weight of the evidence. We usually do not weigh the evidence on appeal from an order granting a new trial on the ground of excessiveness, but determine only whether there was substantial evidence, viewed in the light most favorable to the trial court's action, to support the trial court's order. If so, there has been no abuse of discretion and the trial court's action will be sustained. Combs v. Combs, Mo., 295 S.W.2d 78, 80[1, 2]; Wicker v. Knox, supra, 242 S.W.2d 569 [3, 4].

Plaintiff contends, however, that the trial court's order in this case was not tantamount to ruling that the verdict was against the weight of the evidence because the court overruled ground 8 of defendants' new trial motion which was that the verdict and judgment were against the greater weight of the credible evidence, and thus, says plaintiff, having sustained the motion on a specified ground, the trial court is deemed to have overruled all· other assigned reasons, and, therefore, the instant trial court specifically found that the verdict was not against the weight of the evidence. The contention is obviously unsound because both grounds for new trial were stated in the motion, i. e., excessiveness of verdict, and that the verdict was against the weight of the evidence. The trial court's order overruling one of those assignments did not nullify the fact that the new trial was granted for the reason that the verdict was against the weight of the evidence in the respect that the verdict was excessive. Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171

S.W.2d 610, 612 [4]. "[W]hen a trial court grants a new trial on the ground of excessiveness (or inadequacy), it is *equivalent* to granting a new trial on the ground that the verdict is against the weight of the evidence." (Emphasis supplied.) Steuernagel v. St. Louis Public Service Co., supra, 238 S.W.2d 431[9–13].

The meritorious question is whether, as plaintiff contends, the trial court abused its discretion in granting a new trial on the ground that the verdict was excessive. The burden of plaintiff's argument in that respect it that while the trial court might have believed from the testimony of defendants' doctor that plaintiff did not have a ruptured intervertebral disc (although plaintiff points out that that doctor's final conclusion was that he could not say positively whether plaintiff did have a ruptured disc), if so, a judgment for $20,000 would be excessive. Plaintiff concludes, therefore, that the trial court ·by ordering a remittitur of only $12,-000 demonstrated that he believed plaintiff had sustained a ruptured intervertebral disc as plaintiff's evidence showed, and that consequently there was no substantial evidence to support the trial court's order reducing the verdict or granting a new trial because verdicts in amounts greater than $32,000 have been permitted to stand where the injuries were similar to those sustained by plaintiff in the instant case.

■ We think the fallacy in plaintiff's contention is his premise that if a ruptured intervertebral disc existed, it necessarily follows that $32,000 was not excessive compensation therefor, and, conversely, if plaintiff did not have· a ruptured intervertebral disc, it follows that he had no serious injury and $20,000 would be grossly excessive. To the contrary, it seems to us that the trial court reasonably could have believed that plaintiff did have a ruptured or partially ruptured intervertebral disc which was causing him some trouble and which might at some future date require correction, but that his resulting disability had been and would be relatively mild. Doctor Pickard said that whatever condition existed in plaintiff's back, his disability was mild and· that his back did not presently require surgi-. cal correction, but that there· was a condition in the back, other than the congenital defect, of sufficient seriousness to cause some disability. He was of the further opinion that if in the future the necessity for an operation appeared and plaintiff was operated, no occupational disability would ensue after the lapse of a year following the operation. Further, the trial court also reasonably could have believed that plaintiff's evidence as to loss of income and as to past and present impairment of earning capacity was uncertain and generally unsatisfactory. Plaintiff's only testimony with respect to earnings was that prior to his entry into the Air Force at the age of 19 he had worked in a dress factory at $35 a week. He said that after his regular discharge from the Air Force (not as a result of physical disability), he took care of a recreation room in the rear of his father's barbershop for which he was paid $15 a week and that he had done some odd jobs at uncertain compensation. He stated the conclusion that his physical condition affected his ability to work and to obtain employment. He did not, however, testify as to where and when he had failed to obtain work because of his condition or the kind of work he could or could not do. He testified that while in the Air Force he had received a certificate indicating completion of high school. The evidence does not indicate that plaintiff could perform only manual labor or that the only type of remunerative employment he is capable of holding is one requiring use of his back. The trial court reasonably could have found that plaintiff had not adduced satisfactory evidence of any appreciable loss of earnings or of impairment of earning capacity.

All in all, there was substantial evidence to support a reasonable conclusion by the trial court that plaintiff had a partially protruding intervertebral disc but that its ef-

'fect, past, present, and future, did not justify an award of damages in excess of $20,-000.

 The fact that, as plaintiff points out, we held in Rogers v. Thompson, Mo., 308 S.W.2d 688, that an award of $40,000 to a 24-year-old railroad employee who sustained a ruptured and prolapsed intervertebral disc so disabling that plaintiff who by education and experience could accomplish only manual labor would be forever unable to perform sustained manual labor and would in the future continue to lose wages he otherwise could have earned, was not excessive, does not mean that an award of damages of less than $40,000 to any young man with a ruptured disc is inadequate or that an award of $32,000 may not in the reasonable view of a trial judge upon weighing all the evidence, be excessive. We agree that a trial court should not lightly or arbitrarily exercise its discretion to grant a new trial on the ground of excessiveness. Lindsey v. Williams, Mo., 260 S.W.2d 472, 478[3, 4]. Under the evidence in the instant record, however, we are of the view that while the evidence considered most favorably to plaintiff may have sustained a $32,000 judgment, we are of the opinion also that there was substantial evidence to support the action of the trial court.

The trial court's order granting defendants a new trial is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.

On Motion for Rehearing, to Transfer, or to Modify.

PER CURIAM.

Plaintiff's motion to modify asks this court to limit the new trial to the issue of damages and, in the alternative, direct that the new trial order be set aside and plaintiff permitted to file the remittitur specified in the trial court's conditional order.

 Plaintiff concedes that this court has heretofore refused to remand a case for retrial on the question of damages only where the trial court has granted a new trial on all issues upon the ground of excessiveness where plaintiff had failed to comply with the trial court's order of remittitur. Fullerton v. Atchison, T. & S. F. Ry. Co., Mo., 285 S.W.2d 572, 574 [5]; Nix v. Gulf, Mobile & Ohio R. Co., 362 Mo. 187, 240 S.W. 2d 709, 717 [17]. Plaintiff, however, contends that either the rulings in those cases should be reconsidered and no longer followed or that those cases should be deemed inapplicable to the instant case, because here, and not in the Nix and Fullerton cases, a specific ground of defendants' motion for new trial, viz., that the verdict was against the weight of the evidence, was overruled by the action of the trial court in sustaining only the assignment that the verdict was excessive. The instant new trial order meant that the trial court considered, upon weighing the evidence, that the verdict was for the right party but was excessive in amount and thus the trial court made clear the particular respect in which it deemed the award to be against the weight of the evidence. Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S.W. 2d 610, 611 [2, 3], 612 [4]. But our reason for refusing to remand for retrial on the issue of damages only was stated in Nix v. Gulf, Mobile & Ohio R. Co., supra, at 240 S.W.2d 717, as this: "Plaintiff had his trial and a verdict as to his damages. He refused to remit and appealed from an order in the making of which we have held there was no abuse of discretion. He is in no position now to ask us to remand for trial upon the damages issue alone—upon the very issue upon which plaintiff appealed and the very issue we have decided was properly ruled below. Such a remand would, in effect, render nugatory our decision that the trial court did not err in granting a new

trial upon all issues upon plaintiff's failure to remit." In the instant case the trial court granted a new trial on all issues and we have held that the trial court did not abuse its discretion in so doing. The reason stated in the Nix case for refusing to limit the retrial to the issue of damages, is equally valid as applied to the facts and circumstances of the instant case and we adhere to the view there expressed.

As noted, plaintiff alternatively asks that we finally dispose of this litigation by permitting him to now make the remittitur he refused to make in compliance with the trial court's order. He points out that we afforded the plaintiffs second opportunities to enter remittiturs in the Nix case, supra, and in Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S.W.2d 426, 430 [6]. And see Barnes v. Chism, Mo. App., 215 S.W.2d 775, 778 [3]. In the Nix case, while defendant's motion for new trial was sustained on the sole ground that the verdict was excessive, the appellant railroad assigned and argued in its brief additional reasons for sustaining the action of the trial court in granting it a new trial. The original opinion in the Nix case ruled only that the trial court had not abused its discretion in ordering a remittitur and granting a new trial in the event plaintiff failed to remit. On motion to modify, this court determined adversely to defendant those additional issues which defendant had briefed and then remanded the case with directions to permit plaintiff to enter the remittitur which had been theretofore ordered by the trial court. In the Steuernagel case the sole question involved on the appeal and ruled in the original opinion was whether the order granting defendant a new trial upon plaintiff's failure to have complied with a remittitur order was void for the asserted reason that plaintiff's judgment had become final prior to the actual entry of an order by the court indicating that defendant's motion for new trial had been sustained. On motion for rehearing and to modify plaintiff asked that final disposition be made of the case, contending that the only issue remaining was the amount of damages and both parties had briefed that issue. We there pointed out that we had authority to direct the judgment that should be entered, even though the trial court had ordered a new trial. Section 512.160, subd. 3, V.A.M.S. And, after pointing out that that case had been in the courts for some time, that plaintiff had indicated that she did not desire a new trial, and that defendant had not contended in its brief that there was any ground other than excessiveness of verdict which would sustain the granting of a new trial, we passed on the issue of damages, held that the trial court had not erred in ordering a remittitur and a new trial, and directed that the order granting the new trial be set aside and plaintiff permitted to file the remittitur theretofore ordered by the trial court.

After having considered the questions involved, it is our view that the practice adopted in the Steuernagel case and followed in the Nix case (although under different circumstances as noted), was not intended to and should not constitute a general policy determining the disposition by appellate courts of cases under the facts and circumstances that exist in the instant case. On the contrary we have the opinion that, under these circumstances, viz.: when a trial court by its order of remittitur has given a plaintiff an opportunity to remit a certain amount from the verdict and thereby retain the remainder of his judgment, and when that plaintiff has refused to so do, and when thereafter the order granting defendant a new trial on all issues on the ground of excessiveness of verdict has become effective, and when plaintiff thereafter has appealed from that order granting defendant a new trial on all issues, and when on appeal plaintiff has contended that the trial court abused its discretion by requiring the remittitur ordered and in granting defendant a new trial, and when an appellate court has ruled that the trial court did not err in granting defendant a new trial on all issues upon plaintiff's failure to have remitted as ordered, an appellate court, as a general

 

rule, should not thereafter on plaintiff's motion set aside the very order of the trial court it had just affirmed and direct that plaintiff have another opportunity to do that which he had theretofore refused to do.

Plaintiff's motion for rehearing or to transfer to the court en banc or to modify the opinion by remanding for new trial on the issue of damages only or to permit plaintiff to remit as ordered by the trial court, is overruled.