**BRIDGE DEVELOPMENT COMPANY,**
Plaintiff-Appellant,

v.

**Vincenzo VURRO and Hans Wiemann,**
Defendants-Respondents.

No. 35625.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 4, 1975.

Ben N. Messina, Laws Offices of Thomas R. Green, St. Louis, for plaintiff-appellant.

Carroll J. Donohue, St. Louis, for defendants-respondents.

SIMEONE, Presiding Judge.

This is an appeal by plaintiff-appellant Bridge Development Company from a judgment of the circuit court of St. Louis County entered August 6, 1973, in favor of the defendants Vincenzo Vurro and Hans Wiemann.[1]

This lengthy, complex and often confusing proceeding began in the magistrate court of St. Louis County on January 22, 1965, when Bridge Development Company sought from Vurro and Wiemann a judgment for $920.00 plus interest and attorneys' fees for eight months rent due under a one year lease. Bridge alleged that *defendants* Vurro and Wiemann were indebted to them in the sum of $920 for "rental of the premises known and numbered as 4522 Karole Manor Drive, Apt. A, and said rental is due and owing pursuant to a lease agreement entered into between Plaintiff [Bridge], as lessor, and Defendants, as lessees . . ."

It appears from the evidence, which is often conflicting, that Mr. Wiemann, who speaks English, German and some French, was owner and operator of a coiffure business and often sponsored persons from European countries to immigrate to the United States. He had negotiations with Mr. Vincenzo Vurro,[2] sometimes referred to as Mario Vurro or Mr. Mario, which culminated in Vurro's coming to St. Louis under an employment contract with Wiemann. Vurro is a hair stylist. There was evidence and the trial court twice found that he could not read, write or understand English, but spoke mostly German, although he was native Italian. He had come from Switzerland. When Vurro came to St. Louis, Wiemann showed him around the City and showed him some apartments. On April 17, 1964, an apartment lease was entered into for the premises on Karole Manor Drive. Bridge De-

---

1. The name Wiemann throughout the transcript is spelled interchangeably Wiemann and Weimann. On the lease referred to hereafter, the name is spelled Wieman.

2. His signature on the lease appears as Vurro Vincenzo.

velopment Company was the lessor and Vincenzo Vurro was "hereinafter called Lessee." The lease provided that the apartment was to be used by "Lessee" and his family as a private dwelling. The term of the lease was one year—May 1, 1964 through April 30, 1965—at a monthly rental of $115.00 per month. The lease was signed by Melvin Steinhoff, property manager of Bridge Development Company, and Vurro. Under one of the signature lines where Hans Wiemann signed, the printed word "Lessee" was crossed out by X's on a typewriter and the word "Co-signer" (not plural) was typed therein. On this line, the signature of Hans Wiemann appears.

Vurro took possession of the apartment and paid rent from May through August 1964. In August, he and his family vacated the premises and discontinued the rent. In January 1965, Bridge notified Wiemann in writing advising him that Vurro had moved out and the rentals were delinquent. That same month the petition for rent against Vurro and Wiemann as lessees was filed in the magistrate court.

After innumerable delays and continuances, the cause was tried to a jury in the magistrate's court on March 6, 1967. The jury returned a verdict in favor of the plaintiff-Bridge and against both defendants Vurro and Wiemann for the sum of $885.00 plus attorneys' fees.

Appeal was taken to the circuit court of St. Louis County. The cause was heard de novo on November 4, 1968. On November 13, 1968, the court rendered judgment in *favor of defendant* Vurro and *against plaintiff,* but in *favor* of the plaintiff and *against* Wiemann.

The basis of the court's judgment was that Vurro could not read and write English, did not understand he was entering into a lease and hence there was no "meeting of the minds and no contract between plaintiff and defendant Vurro." However, the court held that Wiemann was liable on the lease because (1) Wiemann dealt with plaintiff for the leasing of premises for his employees on a number of occasions, and was thoroughly familiar with all of the terms of the lease. (2) The failure of defendant Vurro to understand the terms of and be bound by the lease resulted solely from defendant Wiemann's failure to explain the terms to him. (3) Also, it can easily be inferred that defendant Wiemann had notice of defendant Vurro's removal from the premises, since Vurro was still in the employ of Wiemann at the time of removal.

Judgment was accordingly entered against Wiemann in the sum of $885.00 plus interest and attorneys' fees.

Bridge Development did not file a motion for new trial on the judgment in favor of Vurro, but Wiemann did, on November 27, 1968, file such a motion. On January 23, 1969, the attorney for the plaintiff, Bridge, confessed certain errors in the court's findings of fact and admitted portions of Wiemann's motion for new trial. He suggested to the court that in the "interest of justice" the court reopen the judgment "for taking of additional evidence." On March 24, 1970, the court on its own motion set aside and held for naught the judgment of November 13, 1968.

Eventually on May 30, 1973, the trial was "continued." The court, however, took the position that it had no jurisdiction over Vurro, since no motion for new trial had been filed and the judgment became final as to Vurro after thirty days from November 13, 1968. The court, however, did proceed to hear additional evidence. Mr. Wiemann, who did not testify in the earlier proceeding, testified that he and Vurro "read" the lease together and had discussions about it in English and German. He indicated that they discussed the fact that the lease provided for monthly rent and that it was for one year. Two customers of Mr. Mario [Vurro] also testified to the effect that Vurro could not speak English except to say "hello" and "how are you."

After listening to this additional evidence, the court, on August 6, 1973, entered judgment in favor of both defendants —Vurro and Wiemann. The court filed a memorandum opinion. In it, the court stated that upon the original trial of the cause, the court ruled that Vurro could not read and write the English language and that there was no "meeting of the minds" between plaintiff and defendant Vurro, and therefore no lease contract. But the court entered judgment in favor of Bridge and against Wiemann on the theory that Wiemann entered into the lease as a *principal* notwithstanding the terms of the lease. Since the plaintiff failed to file a motion for new trial, the judgment in favor of defendant Vurro and against plaintiff became a final judgment. The court's memorandum continued that the plaintiff consented to Wiemann's motion for new trial to the extent of reopening the case for the taking of additional testimony on the issue of whether Vurro could read and write English. After further evidence, the "Court is still firmly convinced that it was correct in its original decision that plaintiff [sic—defendant Vurro?] could not read and write the English language sufficiently at the time of execution of the lease to enter into a contract with plaintiff."

The Court further held in its opinion of August 6, 1973, that although the original judgment against Wiemann was a "just Judgment based upon the evidence" the judgment cannot stand because "this Court has only jurisdiction to enter such Judgment as could have been entered in the Magistrate Court" and is unable to enter a judgment against Wiemann on the lease, since plaintiff's suit is only a petition for "breach of lease agreement" and Wiemann in his motion for new trial correctly points out that the court exceeded its jurisdiction because the judgment reformed a written instrument[3] which was "not properly before the court." Hence, the court concluded "the Court has no alternative except to enter Judgment in favor of both defendants and against plaintiff on the petition."

From this judgment, the plaintiff, Bridge Development Company, appeals.

Bridge makes many contentions, some of which are not sufficiently definite to preserve anything for review. But the principal contentions are that (1) the court erred when it held that it had exceeded its jurisdiction and reformed the lease, because the court merely construed the instrument and (2) the court erred when it held it lost jurisdiction over Vurro after it had sustained Wiemann's motion for new trial. Bridge also contends that Wiemann was a principal, surety or guarantor on the lease, since he signed as "co-signer."

Wiemann on the other hand contends that Wiemann cannot be held because he was not named in the body of the lease and since the principal was not held liable, the surety or guarantor cannot be held liable. Vurro contends that the court was correct in finding it lost jurisdiction over him.

■ Regardless of the substantive liability of Wiemann, either as a principal, surety or guarantor, and regardless of whether there was mutual assent as to the lease between Bridge and Vurro, we believe that the judgment of the trial court must be affirmed because of the procedural posture of this cause. When judgment was entered on November 13, 1968, for Bridge Development Company against Wiemann, and in favor of Vurro and against Bridge Development, the judgment disposed of all the parties and issues in the case as to Vurro became final thirty days after rendition. Since no motion for new trial was filed by Bridge, the judgment to Vurro became final. Rule 81.05, V.A.M.R., provides that a judgment becomes final at the expiration of thirty days after the entry of judgment if no timely motion for a new

3. By making Wiemann liable on the lease presumably as a principal, when Vurro was the lessee and denominated as such.

trial is filed. And Rule 75.01 provides that the trial court retains control over judgments during the thirty day period after entry of judgment. Judgment in favor of Vurro was entered November 13, 1968. No motion for new trial was filed as to Vurro; the court therefore lost jurisdiction as to Vurro thirty days after November 13, 1968. Hence, that part of the judgment of August 6, 1973, was not error. Cf. Nix v. Gulf, Mobile & Ohio R. Co., 362 Mo. 187, 240 S.W.2d 709, 711 (1951).

 Neither did the trial court err in finding that the judgment entered in 1968 against Wiemann on the lease cannot stand. In effect the trial court reformed the lease to include Wiemann as a principal when the original petition in the magistrate court sought damages against both Vurro and Wiemann as lessees. It is clear that whatever Wiemann's status was under the lease he was not a "lessee," not being named in the body of the instrument and not having the benefits as a lessee. Drzewiecki v. Stock-Daniel Hardware Co., 293 S.W. 441, 444 (Mo.App.1927). Furthermore, on appeal from a magistrate court which has no equitable jurisdiction, § 482.100, RSMo 1969, V.A.M.S., the jurisdiction of the circuit court on appeal from a magistrate court is entirely derivative of the magistrate court's jurisdiction and the "same cause of action, and no other, that was tried before the magistrate, shall be tried . . . upon the appeal . . . ." § 512.280, RSMo 1969, V.A.M.S.; Royal Loan Co. of St. Louis v. Darr, 220 S.W.2d 787, 789 (Mo.App.1949); Liberty Import Corp. v. Neuman, 241 Mo.App. 73, 234 S.W.2d 227, 228 (1950). As the distinguished jurist Judge Walter Bennick of this court once explained in the case of

Newman v. Weinstein, 230 Mo.App. 794, 75 S.W.2d 871, 873 (1934):

". . . [T]he jurisdiction of the circuit court over an appeal from the judgment of a justice's court is not original but derivative, and is no greater in disposing of the appeal on its merits than was the jurisdiction of the justice himself. In other words, on appeal from a justice's court, the circuit court acquires and possesses such jurisdiction, and only such, as the justice had, and, aside from matters of practice, in effect sits as a justice's court in the disposition of the cause. [citations omitted]." [4]

See also State ex rel. Royal Globe Insurance Co. v. Swink, 469 S.W.2d 881, 882 (Mo.App.1971).[5]

By statute the magistrate courts have no jurisdiction over "any strictly equitable proceedings." § 482.100(2). Reformation of a written instrument has long been considered an equitable proceeding. See King v. Riley, 498 S.W.2d 564, 566 (Mo.1973); Sloss v. Farmers Mutual Automobile Insurance Co., 350 S.W.2d 446, 451 (Mo.App.1961); Oliver-Finnie Co. v. Ozark Mountain Canning Co., 101 S.W.2d 89, 92 (Mo.App.1936). Therefore, due to the derivative nature of its jurisdiction, a circuit court has no jurisdiction to reform a written instrument in a trial de novo on appeal from a judgment of a magistrate court. See Johnson v. Stephens, 107 Mo.App. 629, 82 S.W. 192, 193 (1904), and cases cited therein.

In light of the above legal principals, we hold that the circuit court did not err in finding that it had no jurisdiction to reform the written lease.

4. Where, as here, statutory provisions relating to jurisdiction of magistrate courts are the same as those formerly appearing in statutes relating to justices of the peace, decisions construing the latter statutes constitute precedents in determining the jurisdiction of magistrate courts and, derivatively, circuit courts on appeal. Hoover v. Abell, 231 S.W.2d 217, 222 (Mo.App.1950).

5. This interpretation has been followed by the other two districts of the Missouri Court of Appeals. Swetnam v. U .S. By-Products Corporation, 510 S.W.2d 829, 831 (Mo.App. 1974) [Kansas City]; Mumford v. Sutton, 476 S.W.2d 141, 143 (Mo.App.1972) [Springfield].

In the posture of this complex procedural case, we believe that the judgment of the trial court rendered in August 1973 was not "clearly erroneous" and hence affirm.

The judgment is affirmed.

McMILLIAN and GUNN, J., concur.