LODONAL D. PINTER, (Plaintiff) Respondent, v. GULF, MOBILE & OHIO RAILROAD COMPANY, a Corporation, (Defendant) Appellant, No. 42512—245 S. W. (2d) 88.

Division Two, January 14, 1952.

888

*Wayne Ely* and *Robert C. Ely* for appellant; *Ely & Ely* of counsel.

*Mark D. Eagleton* and *Wm. H. Allen* for respondent.

ELLISON, J.—The defendant railroad appeals from a judgment against it for $40,000, recovered by the plaintiff-respondent in the circuit court of the City of St. Louis, for personal injuries sustained while repairing one of appellant's railroad bridges near Philadelphia, Mississippi. His petition prayed judgment for $100,000 damages. The jury's verdict was for $45,000. The trial court enforced a remittitur of $5,000. The defendant-appellant's brief here

concedes its negligence, but complains of fifteen alleged errors during the trial. Its Points and Authorities narrow these down to three: (1) erroneous admission of expert opinion testimony of respondent's medical witnesses, none of whom had ever treated respondent or seen him, except to qualify as an expert witness in his behalf; (2) error in giving an instruction No. 2 on the measure of damages; (3) complaint that the judgment was excessive, and the jury's verdict the result of prejudice.

The underlying facts were that respondent, while employed as a member of appellant's Bridge and Building gang, was engaged in repairing the bridge on October 8, 1948. The work included the replacement of some old heavy timbers, or "cap sills". As plaintiff and other workmen were rolling one of the cap sills off the bridge with cant hooks, they failed to secure the end resting on the bridge while the other end projected out to one side without support. In consequence the unsupported end suddenly tilted down and the other end "kicked up", causing respondent's cant hook to strike him and knock him off the bridge. He fell to the ground 16 feet below, landed on his feet on some old timber, and toppled over backward.

The circuit court trial began over two years later on November 20, 1950. The respondent's petition claimed serious permanent injuries resulting from the casualty to his head, neck, back, spine, vertebrae, sacrum, ilium, buttocks, sides, left and right legs, feet and toes, internal and external male organs, hips, bladder, and the bones, joints, muscles, tendons, ligaments, cartilages, discs, intervertebral spaces, membranes, skin, tissues, glands, nerves and vessels thereof. His chief injuries were to his back in the sacroiliac region. His medical testimony came from three surgeons ▮ or physicians as expert witnesses, who had first seen him about two years after the casualty.

▮ Under its first point appellant complains of the testimony of Dr. Sigmund Tasham, an X-ray expert, who took three pictures of respondent's back on September 27, 1950, a little less than two years after the casualty. He testified these pictures, one in particular, showed a small piece of bone missing between the fifth lumbar vertebra and the sacrum. And he estimated that condition had developed within a year. Another picture showed a decided narrowing of the space between that vertebra and the sacrum. In fact the doctor said the space was obliterated. He attributed this condition to rupture or degeneration of the disc between the two, and said that usually resulted from trauma. Later on cross-examination the witness estimated the condition had existed for 1-½ years, then he said a year, and finally approximately a year. Appellant's counsel objected below, and does here, on the ground that the pictures were taken at too remote a time to have probative value under the doctor's testimony.

This assignment is not referred to in the argument in appellant's brief. We overrule it on the ground that the doctor's testimony

clearly stated such injuries usually result from trauma, the date of which could only be estimated approximately from the pictures themselves. The doctor's estimate ranged from "within a year" to a year and a half, and "approximately a year", showing the time element was uncertain. Actually the pictures were taken a little over a year and eleven months after the casualty. We think it was not improper to admit the testimony to the jury.

■ Appellant's second assignment under its first point refers to this incident. When respondent's expert witness Dr. Fox was testifying, respondent's counsel asked him a hypothetical question including the following assumption: "that prior to that time on October 8, 1948, (when respondent fell off the bridge) for at least *three, four or five* years, he had absolutely no pain of any kind in his back, legs, hand, or fingers, or any other part of his body." (Parenthesis and italics ours). Counsel for appellant objected because it included an assumption not supported by the evidence that respondent "had no pain or suffering in his back from three to five years before."

After a colloquy between the court and counsel out of the hearing of the jury respondent's counsel announced: "I promise to supply that when the plaintiff takes the stand." In reliance on that promise and the foregoing assumption Dr. Fox was permitted to answer: "It would appear as though the patient was suffering from one of several lesions. He could either have a severe sprain of the sacroiliac and the lumbro-sacral joints or he could have a herniated disc."

Appellant contends here that respondent's counsel did not keep his promise by adducing from respondent testimony concerning the absence of pain in his back during the period stated, upon which the doctor's answer was based, and that the omission therefore was erroneous, citing Root v. K. C. Southern Ry. Co., 195 Mo. 348, 375-7 (7), 92 SW. 621, 630-1(9); Hahn v. Hammerstein, 272 Mo. 248, 262 198 SW. 833, 837(8).

This necessitates a review of plaintiff-respondent's testimony on the foregoing issue about pain in his back. But it must be first determined what the hypothetical question meant in assuming that for "three, four, *or* five years" before respondent fell off the bridge in October, 1948, he had absolutely no pain of any kind in his back. As to this time element the question was in the disjunctive. In our opinion Dr. Fox would and did understand he could base the answer he gave on the assumption that respondent had had no pain in the back within the minimum time of three years stated in the question, and that if the difference between that minimum and the stated maximum of five years would have made any difference in his answer, he would have said so.

Respondent testified he had worked for the appellant railroad steadily from September, 1945 to the date of his injury, October 8, 1948, as a member of its bridge ■ gang. The work was heavy. During

that time he had had no disability affecting his capacity to work, and he was in good health. Prior to that he had worked for the railroad in other capacities since April, 1942, or earlier. He did have trouble with his hands, back, body and legs and slight pains all over his body in 1942, including numbness and weakness. He was on a carpenter job, and for a brief time worked as a fireman. At that time his illness was attributed to malaria and neuritis, and on the advice of the railroad doctors he had two teeth extracted. This was late in 1942 and after four or five months in the spring of 1943, he was in good condition and didn't have any pain until he fell off the bridge.

On cross-examination respondent admitted that in 1942 he had trouble with his arm, leg, hand, foot and side. It didn't involve his back. He would not say he never had a pain in his back, or that he never felt it. But he stated it was not a constant pain. Being asked whether, after the spring of 1943, he ever had any more trouble of any kind with his back, leg, arms, feet or hands he answered that he did not. Then he added, "I wouldn't say that I never had any pain, but I never had any constant pain. I was never bothered. I was in perfect working condition." He was asked if Dr. Majure, his family physician, taped his back in 1945, and denied it, saying the Doctor never taped his back in either 1944 or 1945. Then he qualified that with the statement that he didn't remember of the doctor's doing it; "that he didn't remember of his doing that at any time; and that he wouldn't say he didn't go; he was my family doctor." This testimony was denied by Dr. Majure, who stated that in 1944 or 1945 he did tape the respondent's back.

As will be recalled the hypothetical question propounded by respondent's counsel to Dr. Fox included the assumption that respondent "had absolutely no pain *of any kind*" in his back for 3, 4 *or* 5 years before he fell off the bridge in October, 1948. Respondent's answer to appellant's counsel on cross-examination was that after the spring of 1943 he never had any more trouble of any kind with his back. But he qualified that by adding that he never had any *constant* pain, was never bothered, and was in perfect working condition. However, he did not state when, in the spring of 1943, or thereafter if any, he had minor inconstant pains, and was not asked about it. Then appellant's counsel asked him about the incident in 1944 or 1945 when Dr. Majure allegedly taped his back.

But the day and month of those years also was not stated in the question. If the taping incident occurred any time in 1944 it was over 3 years 9 months before the casualty on the bridge on October 8, 1948. If it occurred in 1945 it must have been on or after October 8 to have been less than three years before the casualty. Respondent denied the taping incident altogether, with qualifications. Dr. Majure kept no record of it. He spoke from recollection, and could not say

whether the alleged taping incident occurred in 1944 or 1945. But even if he had been definite it would have been a mere contradiction of respondent's testimony. And there was other contradictory testimony from two railroad employees that respondent complained about his back and legs shortly before and after he fell off the bridge. And the appellant's medical expert testified he thought respondent's vertebral disc was not the cause of his trouble, and that it might be caused by neuritis. But, we hold the foregoing testimony was sufficient to supply the assumption omitted from his counsel's hypothetical question that respondent had absolutely no pain of any kind in his back for three years before the casualty, and that the case was for the jury. For that reason the appellant's contention is overruled.

 Appellant next assails respondent's Instruction No. 2. The instruction submitted to the jury the question of the permanency of his injuries. On that point appellant contends the evidence must show with reasonable certainty that respondent's injuries were permanent, and that it failed to measure up to that standard in this case, citing State ex rel. K. C. Pub. Serv. Co. v. Shain, 350 Mo. 316, 322(2), 165 SW. (2d) 428, 430-2(2-5). See also DeMoulin v. Roetheli, 354 Mo. 425, 437(10), 189 SW. (2d) 562, 567(14).

In this case the evidence on that point was as follows. Dr. Fox expressed the opinion that respondent would be unable to do anything requiring activity of his back in lifting; that he would be unable to be on his feet for any long period of time; and would not be able to do anything requiring any bending. With reference to his future condition as regards the pain he had suffered since he fell off the bridge, the Doctor answered: "Particularly in view of the fact that the patient has been operated upon without any success, it would be my opinion that he is going to continue to have his pain and permanent symptomatology."

Dr. Haynes stated he thought respondent was disabled from performing manual labor, and that that disability would continue in the future—unless it is corrected some way. Being asked if he knew any way in which respondent's condition could be corrected, he answered "Not other than what he has already had." Continuing, he agreed that "all the attempt at correction which (he) would advise, has already been done." And he further stated that a trauma such as respondent had suffered, involving the sacroiliac joint or changes around the lumbro-sacral joint, is painful, and accentuated by an attempt to move. The operation already performed on respondent which Dr. Fox and Dr. Haynes mentioned (the latter by the words "What he has already had,") referred to one performed on respondent's back by railroad surgeons at the Missouri Pacific Hospital in St. Louis on September 2, 1949, about eleven months after the casualty, following six trips he had made there for diagnosis and treatment.

■ Appellant's last contention is that the judgment for $40,000, as reduced by the trial court from the jury's verdict for $45,000, was still excessive and the result of passion and prejudice. Nine of the jury signed the verdict. On the point that the judgment was excessive appellant cites the following cases.[1] The Shain case, first cited, held that as a general rule bone fractures and involvement of the sacroiliac joint are not considered permanent injuries, absent substantial evidence to that effect. It ruled the expert testimony there, as set out in the Court of Appeals opinion [159 SW. (2d) l. c. 340-1], was insufficient to make a case for the jury on the permanency of the plaintiff's injuries.

In the Mauck case, decided in 1941, the plaintiff was injured in the sacroiliac region. He had a hypertrophic arthritis. The jury's verdict for $42,500 was reduced $20,000 by this court to $22,500. The plaintiff there was 52 years old when injured and his earnings were "about $3500 per year." In the Harrison case, decided in 1936, a verdict for $40,000 was reduced $25,000 to $15,000. The plaintiff there was 39 years old and his annual earnings were about $2160. One of his expert physicians testified there was a distinct lesion in the fourth lumbar vertebra with a displacement, but he did not take or examine an X-ray picture. The plaintiff's two other experts testified he had an unstable gait, loss of sensation or numbness, and complained of headache and backache. The defendant's experts said X-rays were negative as to any injury to the bone.

The respondent cites the following[2] among other cases. In the Nix case the plaintiff suffered head, back, neck and arm injuries. He got a verdict for $20,000, which the trial court reduced to $12,000. The particular facts there have little bearing here. Apparently the point on which the case is cited [l. c. 713(5)] ■ by respondent is its ruling that we are not duty bound to view the evidence in the light most favorable to the respondent, but should inquire only whether the *trial* court here abused its discretion, in reducing the instant verdict for $45,000 to $40,000. In other words, we must decide whether the verdict should have been further reduced, as appellant contends here now. So also the Steuernagel case,[2] cited by respondent, holds "an appellate court should not undertake to weigh the evidence on the issue of plaintiff's damages, but should examine the record to de-

[1]State ex rel. K. C. Pub. Serv. Co. v. Shain, 350 Mo. 316, 324(2), 165 SW. (2d) 428, 430-2(5); Mauck v. A., T. & S. F. Ry. Co. (Mo. Div. 2) 154 SW. (2d) 73, 78; Harrison v. St. L.-S. F. Ry. Co., 339 Mo. 821, 839(10), 99 SW. (2d) 841, 850(10).

[2]Nix v. G., M. & O. Rd. Co., 362 Mo. 187, 240 SW. (2d) 709, 713(6), 718 (17); Venditti v. St. L. Pub. Serv. Co., 362 Mo. 339, 240 SW. (2d) 921, 930(11); Steuernagel v. St. L. Pub. Serv. Co., 361 Mo. 1066, 1074-5(4), 238 SW. (2d) 426, 430-1 (8, 9); Hayes v. Wabash Rd. Co., 360 Mo. 1223, 1238(6), 233 SW. (2d) 12, 19 (5).

termine whether there is substantial evidence supporting the view that plaintiff's injuries were less serious and disabling than claimed by plaintiff, or that some of her physical infirmities did not result from the accident she suffered."

And yet on the question of the trial court's *discretion* we have in several cases set a more or less arbitrary limit on the damages that can be awarded in cases involving the same type or class of injuries, to establish a rule of uniformity.[3] Thus in the Counts case, written in 1949, it was stated that research had disclosed no case in which a judgment for personal injuries had ever been allowed to stand in this court for more than $50,000. The verdict there had been for $165,000 for the loss of both legs. The trial court reduced it $25,000 to $140,000, and this court reduced it $60,000 more to $80,000, permitting it to stand at that figure because of the decreased purchasing power of the dollar.

In the Venditti case, supra,[2] where a woman 38 years old in a bus collision suffered injuries to various parts of her body, including her neck and sacroiliac region, the latter two being so severe as to require her to wear a brace on each, her verdict was for $20,000, which the trial court reduced to $13,000, and that judgment was affirmed because of the reduced purchasing power of the dollar.

In the Hayes case, supra,[2] the plaintiff, about 39 years old, suffered two injuries from two casualties a few weeks apart, and sued for both in one suit, recovering $10,000 damages for one and $45,000 for the other. The trial court ordered a remittitur of $5,000 from each, reducing the aggregate judgment to $45,000. The lower part of his back was injured causing a herniated disc between the fifth lumbar vertebra and sacrum, and necessitating the use of a steel brace from the hips up. This court held the judgment was still excessive in the amount of $7,500 and ordered a remittitur in that amount, reducing the judgment to $37,500.

In the instant case the respondent was about 41 years old and had a wife and three children. Appellant's answer admits he was earning about $240 per month, or $3,000 per year when injured, though this was disputed at the trial. After the casualty in which he was injured he made six trips to the Missouri Pacific Hospital in St. Louis, and underwent an ineffectual operation on September 2, 1949, at the instance of the appellant. It is undisputed that he has suffered pain since the casualty, and as we understand the record he continues to wear a sacroiliac girdle. His physician-experts testified he would continue to suffer pain, and that his condition was incurable, especially in view of the prior unsuccessful operation. They also said he was

[3]Smiley v. St. L.-S. F. Ry. Co., 359 Mo. 474, 483-4 (4, 5), 222 SW. (2d) 481, 486-7(6, 7); Counts v. Thompson, 359 Mo. 485, 502-4 (8, 9), 222 SW. (2d) 487, 495-6(15-23).

disabled from performing manual labor, or at least labor requiring the use of his back or feet for any long period of time, which apparently is all he has been trained to do.

In Cruce v. G., M. & O. Rd. Co., 361 Mo. 1138, 1151(7), 238 SW. (2d) 674, 682(17, 18), a verdict of $52,500 for a plaintiff 62 years old, who received lacerations of the scalp and arm, abrasions on the left side and contusion of the left sternomastoid muscles—as reduced by a circuit court remittitur of $12,500—was affirmed for $40,000. These injuries were not the same as those here, it is true. But considering respondent's age and greater life expectancy, his disqualification to perform the manual labor he is used to doing, his past and future suffering, we hold the reduced judgment here for $40,000 should stand.

 Appellant's final assignment is that the cause should be reversed and remanded for passion and prejudice of the jury aroused by the misconduct of respondent's counsel during the trial. However it is conceded the alleged misconduct was not intentional. We have read the record and find nothing in it calling for a reversal on that ground. Nor do we find anything indicating the trial court felt due bounds had been overstepped calling for drastic action.

For the reasons stated the judgment is affirmed. All concur.