Samuel W. HARP, Respondent,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, a corporation, Appellant.

No. 49743.

Supreme Court of Missouri,

Division No. 2.

July 8, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 9, 1963.

Arnot L. Sheppard, Gentry, Bryant & Sheppard, St. Louis, for appellant.

Gray & Jeans, Charles E. Gray, St. Louis, for respondent.

STOCKARD, Commissioner.

The Illinois Central Railroad Company has appealed from a judgment in the amount of $86,000 in respondent's action for personal injuries under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Respondent, a locomotive engineer for Terminal Railroad Association of St. Louis, delivered a train of railroad cars to the freight yard of appellant in East St. Louis, Illinois, and left the cars at the designated place. He then moved the diesel engine onto appellant's track number 6 and stopped. While standing still with the brakes set the engine was struck from the rear by three freight cars under the control of appellant with such force that it moved about 30 feet. Respondent's suit was based on injuries allegedly sustained in this collision.

Appellant admits the occurrence of the above incident, but it challenges the sufficiency of the evidence to support a finding of "proximal causal connection" between the collision and respondent's alleged injuries.

Respondent was seated on the engineer's seat in the engine looking toward the front. With him in the cab were Charles Palmeri, the fireman, and Robert Cusak, a switchman. Respondent testified that as a result of the collision he "was thrown and bounced around in the cab" and, in his language, when I came to myself I was lying backwards out the side window, that is the engineer's window." In describing what happened, Mr. Palmeri stated that as he was "being scooted off of this seat box," apparently as the result of the collision, respondent "was leaning up against the back rest there on the engine, more or less just like twisted him all around and then threw him forward and then backward." On cross-examination Mr. Palmeri was asked if he said that respondent was knocked forward, and he replied: "Well, the way the impact was he was knocked forward and more or less kind of twisting him around

in the seat to where his back was up against the side where you rest your arm * * *." Respondent immediately complained of pain and he said that he had no feeling in his left arm. He testified that when he struck the window he suffered pain "through my neck down into my back," in his left shoulder and arm, and into both legs "but mostly in the left and across my lower back." The fireman stated that immediately after the collision respondent had three "marks" on his back, two of them on the left side and one "just about on the spine." Following the collision the fireman operated the engine and returned it to St. Louis, and respondent sat on the fireman's seat and "kept more or less trying to get circulation through his hand and arm." When respondent got off work he went directly to the Missouri Pacific hospital where he was given a "capsule" to relieve his pain. He remained at the hospital for approximately two weeks, and while there he was given "whirl bath treatments" and medication. After his discharge he had "terrific headaches," he had pain in his lower back, and his legs still bothered him. He returned to the hospital twice a week for several weeks for "some heat treatments and vibrating treatments." On April 23, the day following the collision, respondent was examined by Dr. Joseph A. Lembeck, who was "in charge of orthopedic work of bone and joint surgery" at the Missouri Pacific Hospital. It was Dr. Lembeck's opinion that respondent had a "low back strain, that is a lumbar strain, and he had a neuritis of the left ulnar nerve of the left arm." At the time of this examination respondent had red marks on his back and was suffering acute pain. In June 1961 respondent went to Dr. Jacques Paul Schaerer who examined him, and after various tests the doctor concluded that respondent's pain was "produced by the disc, as demonstrated in the discogram [a test he had made], between 1–5 and S–1," and also that in his neck area "there was a disc injury at the level of C–5–6." Dr. Schaerer testified that his examination revealed mus-

cle spasm in the lumbo sacral region, that back movements resulted in pain, that there was some limitation of neck movement, and that there was numbness over the little fingers of the left hand extending into the lower third of the forearm. He further testified that discograms and myelograms made by him showed a ruptured disc at the level of C5–C6 and at L5–S1. On July 3, 1961 a laminectomy was performed by Dr. Schaerer for the removal of the L5–S1 ruptured disc, and a revision of this laminectomy was performed on July 20. In the course of his testimony Dr. Schaerer testified at length concerning his methods of examination and treatment of respondent, the cause of a rupture of a disc, its effect, and the technique of correction by the performance of a surgical operation. A hypothetical question was submitted to Dr. Schaerer in which he was asked to assume, among other things, that on April 22, 1961 respondent was involved in an accident as previously described herein; that respondent was "thrown around" and when "he ended up he was leaning with his back up against a metal window;" that immediately thereafter he started suffering pain in his low back with some pain down his left leg, pains into the neck and left shoulder and arm; and that immediately thereafter he was hospitalized and his condition was diagnosed as acute lumbar sprain and cervical sprain, and that he was given treatment in the form of "whirlpool baths." The doctor was then asked to take into consideration the findings he made when he examined and treated respondent, the myelographic and discographic studies he had made, the operation he had performed, and the findings made by him at the time of the operation. He was then asked if he was able "to give us an opinion * * * based upon reasonable medical certainty * * * as to what injuries, if any, Mr. Harp sustained in the accident" referred to and assumed in the hypothesization of facts. In answer to this question the doctor stated "It is my opinion that [re-

spondent] has sustained (a) an injury to the cervical spine consisting of a ruptured disc at C–5–6 and (b) an injury to the lumbo sacro area consisting of a ruptured disc at L5–S1." Following this the doctor was cross-examined at length concerning his findings and the basis for his opinion.

Appellant's contentions in its first point, in substance, are as follows: (a) respondent's injuries are such that a layman cannot draw any conclusion with respect to proximate cause and therefore in this case it must be established by expert medical testimony, and (b) the opinion expressed by Dr. Schaerer did not have sufficient factual basis to constitute substantial evidence of cause and effect and it established no more than a probability. In its second point appellant challenges the opinion of Dr. Schaerer as to the "causal connection between the collision and plaintiff's sore back" because (a) the hypothetical question does not present "substantial facts which are of such probative value as to give his opinions any worth," and the opinion therefore is a non sequitur and no more than a mere theory and guess wholly unsupported by any probative facts, and (b) the opinion was "based 'exclusively' upon history of the occurrence as given to him by plaintiff." Contention (b) under point one and contention (a) under point two are substantially the same.

We agree that the cause of those injuries of respondent described in the evidence, under the circumstances of this case, are complicated matters not within the understanding of ordinary jurors, and that whether a submissible case was made as to proximate cause depends upon the sufficiency of the opinion evidence of Dr. Schaerer. This disposes of what we have designated as part (a) of appellant's first point. Before considering the contention that the opinion of Dr. Schaerer did not constitute substantial evidence of proximate cause we should first set forth certain basic rules concerning the use of opinion evidence.

As an exception to the general rule that a witness may not express an opinion, an expert witness may do so when qualified as such and when the subject matter is not of such common knowledge to invade the province of the jury. Schears v. Missouri Pacific Railroad Company, Mo., 355 S.W.2d 314, 321; Christian v. Jeter, Mo., 287 S.W.2d 768. There is no question but that proper opinion testimony as to causal connection is competent and can constitute substantial evidence. Dorsey v. Muilenburg, Mo., 345 S.W.2d 134, 138; Schaefer v. Rechter, Mo., 290 S.W.2d 118; Ketcham v. Thomas, Mo., 283 S.W.2d 642; Waterous v. Columbian Nat. Life Ins. Co., 353 Mo. 1093, 186 S.W.2d 456, 459; Glowczwski v. Foster, Mo.App., 359 S.W.2d 406. However, the expert's opinion must not be a mere guess or conjecture but must be based upon facts and adequate data, and the opinion must have in support of it reasons and facts supported by competent evidence which will give the opinion sufficient probative force to be substantial evidence. Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844; Schaefer v. Rechter, supra; Kimmie v. Terminal R. R. Ass'n, 334 Mo. 596, 66 S.W.2d 561. If the expert witness does not have personal knowledge of those facts he must be asked by use of the hypothetical question to assume the truth of them. Schears v. Missouri Pacific Railroad Company, supra; De Donato v. Wells, 328 Mo. 448, 41 S.W.2d 184, 82 A.L.R. 1331.

In this case Dr. Schaerer testified at length concerning respondent's condition as determined by him from examinations, tests, and surgery. In the question to which he gave his answer in the form of an opinion he was asked to take into consideration those facts as determined and testified to by him, and also to assume the truth of certain other facts of which he did not have personal knowledge but which were otherwise established by competent evidence. The reasons advanced by appellant why it believes the opinion of Dr. Schaerer lacked sufficient basis are as follows.

■ First. Appellant says that the fireman testified that respondent was knocked forward as a result of the collision, but that "this is a physical impossibility" and "by the incontrovertible law of physics" respondent would have been thrown backwards by the collision "if thrown at all." The conclusion then is drawn that "since this evidence cannot possibly be accepted, it leaves unknown just what happened to plaintiff prior to the time he was leaning backward out of the cab window." We do not agree with appellant's summary or statement of the evidence. When the engine was hit by the freight cars it moved forward with respondent in it. Therefore, respondent was knocked forward. He was sitting on a seat that rotated, and unless it was precisely in line with the direction of movement the seat would have turned as a result of the collision. This is in substance what Mr. Palmeri said on cross-examination. However, the important fact is that as the result of the collision respondent was thrown about in the cab of the engine and that he landed on his back in the window with sufficient force to cause red marks on his back and to result in some injury.

■ Second. Appellant asserts that "backward bending of the back is not the classic movement to create disc trouble" and we therefore are left with no explanation of how a protruding disc could result from a backward bending of the spinal column. Dr. Schaerer testified that ordinarily "a great deal of force" is necessary to rupture a perfectly normal disc and that it usually results from a forward bending. He also testified that it could occur from "any excessive motion in the spinal column" including motion "sideways, backwards or forwards." He explained in detail how such an injury could result from movement other than forward bending, and in doing so he presented to the jury a demonstration with a plastic model of a human lumbar spine. This contention is without merit.

Third. Appellant asserts that the opinion was insufficient because it was based " 'ex-clusively' upon the history of the occurrence as given to him by respondent. We must review the background of the evidence. After Dr. Schaerer had given his opinion in reply to the hypothetical question asked on direct examination, he was cross-examined at length concerning the basis for that opinion, and the following occurred:

"Q. * * * Now am I correct in saying that you are basing that [the opinion that the collision brought on the symptoms] on the mere fact that that [collision] occurred, no matter how it affected him physically at the time, is that right or not?

"A. Well, I guess that is correct, because nobody can tell me what happened exactly. Yes, that is correct.

"Q. And you are basing your opinion exclusively upon what he told you about it.

"A. Yes, of course.

"Q. You weren't there?

"A. That's right.

"Q. So your opinion is based on what he told you about what happened on that occasion?

"A. Yes."

■ Appellant seizes upon this testimony and asserts that the opinion of Dr. Schaerer was based exclusively upon the hearsay statements to him by respondent. However, the reference to what respondent told the doctor pertained only to the facts of the collision and that was but a small part of the total hypotheses of facts. There is nothing in the record to indicate that what respondent told the doctor was any different from the facts hypothesized in the question upon which he based his opinion. It is true that it has been held consistently, and properly so, that a physician may not base an opinion on the previous history of a case as received from the patient because such a history is within the hearsay rule and for that reason is not a proper foundation.

Schears v. Missouri Pacific Railroad Company, supra. But, it has also been held that "If * * * the so-called 'history' is made up of facts which in themselves are competent evidence, and which are in evidence, then any objection to the use of such 'history' [by the expert witness in forming his opinion] must fall." Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S.W.2d 780, 782; Huffman v. Terminal Railroad Association of St. Louis, Mo., Mo., 281 S.W.2d 863, 871; Hunter v. St. Louis Southwestern Railway Company, Mo., 315 S.W.2d 689. The Schears case, upon which appellant primarily relies, cites these cases and quotes from some of them with approval. The prejudicial error in the Schears case was that the expert medical witness recited to the jury the hearsay statements made to him by the plaintiff in an attempt to bolster the proof of those disputed but essential facts. That did not occur in this case. Assuming, therefore, that the opinion of Dr. Schaerer as to the occurrence of the collision was based "exclusively" on what respondent told him, as far as is shown by the record those facts were precisely the facts otherwise established by competent evidence and submitted to the doctor in the hypothetical question. The record does not demonstrate prejudicial error in this respect.

**Fourth.** Appellant asserts that the "first hypothesis of any consequence" in the question to which the opinion answer was given is that respondent was required to "climb on and off" the locomotive, and that the third hypothesis is "that plaintiff will have to walk out on the tracks to get his engine." Appellant asks, "Where is the evidence that plaintiff cannot do so?" It may be true that the two hypotheses now challenged by appellant were unnecessary and surplusage, but appellant made no objection on that basis. The fact that there was no evidence that respondent could not climb on and off the locomotive and could not walk out on the tracks is totally without merit. The question is, was there evidence that in the performance of his duties re-

spondent was or would be required to do these things, and there obviously was.

**Fifth.** Appellant next says that the "second postulate" is that plaintiff was sitting in his engine with the brakes set at the time of the collision and that it was moved about 30 feet by the collision, but that "There are no supporting facts whatever shown in this record but merely that the engine was moved about 30 feet by the collision." If appellant means by this roundabout assertion that there was no evidence that plaintiff was in the cab of the engine or that the brakes were set it is entirely in error. Appellant argues that the "fact alone," referring to the fact that the engine was moved about 30 feet by the collision, "will quite obviously not warrant the conclusion of a causal connection between it and plaintiff's bad back, since the evidence discloses further that both the fireman and a switchman were in the locomotive and it does not show that either of them sustained any injuries of any consequences." We agree that the fact *alone* that the engine was moved 30 feet would not support the opinion of the doctor, but plaintiff does not rely on that fact alone. The fact that others in the cab were not shown to have sustained injuries of any consequence as the result of the collision is immaterial. We can well imagine the objection of appellant if evidence of such injuries had been offered by respondent as proof that he was injured, as appellant's argument implies would have been proper.

"The facts upon which an expert's opinion is based, like the facts sufficient to support a verdict, must measure up to the legal requirements of substantiality and probative force, and 'The question whether such is based on and supported by sufficient facts or evidence to sustain the same is a question of law for this court.'" Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, 849. However, it is not our function to weigh the evidence. Craddock v. Greenberg Mercantile, Mo., 297 S.W.2d 541, 549. The latitude of courts in consid-

ering medical opinion as substantial evidence of causation is demonstrated in Schaefer v. Rechter, supra, 290 S.W.2d at p. 123, by the numerous cases there cited. The reasons advanced by appellant do not demonstrate that the opinion, as a matter of law, was not based on and supported by substantial evidence, and for us to say that in no circumstance could the injuries of respondent have resulted from the collision would amount to us substituting our judgment for that of a medical expert. We also note that appellant's expert medical witness did not testify that the facts were such that he, as an expert, could not express an opinion. Instead, he testified that in his opinion "what had happened" to respondent was that he "had a low back strain, that is a lumbar strain, and he had a neuritis of the left ulnar nerve of the left arm." It thus appears that the two medical experts differed in their opinions, not an uncommon occurrence, and we find no error in the respects contended by appellant.

Appellant also challenges a second hypothetical question to which Dr. Schaerer answered that in his opinion respondent could not at the time of trial perform the work of an engineer on a diesel locomotive. A further statement of what occurred is required.

In answer to a hypothetical question Dr. Schaerer stated, without objection, that "from the findings of my last examination of the patient, I do not believe that he is able to do this type of work," referring to the work that respondent normally performed before his injury as an engineer of a diesel engine engaged in switching operations. On cross-examination the doctor admitted that his opinion was based on the assumption that respondent would sustain "severe jolts." Upon motion of appellant his answer in the form of an opinion was stricken out and the jury was instructed to disregard it. On redirect examination respondent then submitted to the doctor another hypothetical question in which he was asked to assume that an engineer is required to ride on an engine of the character and type shown by an exhibit which was shown to the witness; that he is required to sit on a seat shown by two exhibits which also were shown to the witness; that in doing his work he looks out and has a view forward, and is sometimes required to look to the rear to see what is back there; he is required "to move around and receive signals from switchman,. receive signals from switches that are on the road bed, look around, see that the track is clear before he moves, watch ahead to see if any people are on the track, workmen crossing and so forth;" that sometimes the engine would be going forward and sometimes backward; that in making couplings "he is required to be on the engine when it couples, two metal bars going together, going up to the speed— moving—let's just have it barely moving, so that you can make coupling into the cars;" that when stopped the cars sometimes move into the engine from behind, that "in riding on the engine * * * he would get a jolt at least as strong as you would get riding in a pullman seat;" and that he has to walk across the tracks to his train, and has to climb on and off of it. At the conclusion of this question appellant objected "unless counsel includes the hypothesis that this seat [in the cab of the engine] that he is sitting on revolves and that he can turn around and look out through the back end of the cab while looking straight ahead without twisting himself around." Counsel then included the hypothesis requested, and the doctor was asked whether in his opinion respondent could do that work. The reply was: "Taking into consideration both conditions,. the neck and the low back, I do not believe so." No objection whatever was made to the question as amended or to the answer as given. However, the following day after the doctor had been excused as a witness, counsel for appellant then moved for the first time to strike the opinion of the doctor "with respect to plaintiff's ability to operate a locomotive now and in the future" because "the doctor testified that it required a lapse of one year's time before it can be de-

termined how effective the disc operation was and it has not been a year, but only about six months [this reason is not presented on this appeal], and second that his forecast was in reality no more than a medical guess and not a reasonable medical certainty, and, therefore, there was no basis for his opinion with respect to ability to operate a locomotive." We note that the doctor was not specifically asked, in arriving at his opinion, to take into consideration the facts found by him to exist as the result of his personal examination of respondent, but the answer of the doctor clearly indicates that he did so.

In its brief appellant asserts that Dr. Schaerer's opinion as to respondent's ability to resume his work as a locomotive engineer "cannot be accepted as proof" because (a) the doctor admitted that "his opinion on that point was just as likely to be wrong as to be right" and was no more than an "educated opinion" which reduced the opinion to a "might or could" situation, and (b) the hypothetical question did not present substantial facts which are of such probative value as to give his opinions any worth.

As to the first contention, appellant relies on certain testimony given on cross-examination *after* the first opinion of the doctor concerning the ability of respondent to work as an engineer had been stricken out and *before* the hypothetical question was asked to which the second opinion was given. Therefore, the cross-examination apparently was directed to the opinion of the doctor as to the cause of respondent's injuries. Appellant cross-examined the doctor at considerable length as to what he understood by the term "reasonable medical certainty," and the doctor stated that it was less than "absolute certainty," and that in reference to doctors it meant "that we are not God. * * * It means we are just human and to commit error is human. * * * Within the limitations of our knowledge, which is always possible of error. Within that limitation it is rea-

sonably certain," The following then occurred:

"Q. Well, as a matter of fact then, you are just expressing an opinion.

"A. Yes. Certainly.

"Q. And you are just as likely to be wrong as right?

"A. That is true for anything we do.

"Q. Isn't that true in forecasting the future?

"A. That is correct.

"Q. No man alive can say with certainty that another man whom he has treated will or will not be able to do certain things in the future, can he?

"A. Of course.

"Q. So, as a matter of fact, what you are expressing might be termed an educated guess, isn't it?

"A. Educated opinion, yes.

"Q. Well, isn't it a guess you are forecasting something?

"A. Well, a guess, of course, that is based on certain knowledge, which is better than the next guy's guess."

When this testimony is considered in context with the rest of the doctor's testimony, it does not have the implication appellant obtains by isolating certain phrases. We think that the opinion of an expert witness in answer to a hypothetical question is an "educated opinion," and it is because of this that it is admissible when it meets the other requirements. The doctor did not testify on a "might or could" basis. He stated that in his "educated opinion" respondent was not able to perform the work required of an engineer, and the answer on cross-examination to the question as to whether he is as likely to be wrong as right, if it can be considered as pertaining to this opinion, must be considered in connection with his testimony concerning the

meaning of reasonable medical certainty and that he was not "God". In other words, the effect of this answer went to the weight of any opinion he expressed and not to its admissibility.

 In connection with the contention of appellant that the hypothetical question presented insufficient facts to sustain the opinion, we have this unusual situation. Appellant's expert medical witness conducted an examination of respondent and testified on direct examination concerning his findings, and that it was his "opinion that the patient [respondent] may resume work as a locomotive engineer." Respondent's expert medical witness also examined him, and testified without objection that after "taking into consideration both conditions, neck and low back," about which he had testified in detail, it was his opinion that respondent could not perform the work of a locomotive engineer. The opinion of an expert medical witness as to whether respondent was able to perform the work of a locomotive engineer should have been premised upon two principal facts; his physical condition and the work he would be required to do. In the hypothetical question submitted to respondent's expert medical witness, the facts pertaining to his work were hypothesized but in arriving at his opinion the witness was not asked or required to take into consideration respondent's physical condition. However, no objection was made on this basis and it is obvious from the answer that the witness did take those facts into consideration. When appellant's expert medical witness expressed his opinion without objection he based it upon his findings concerning respondent's physical condition, but he was not asked or required to take into consideration the nature of the work to be performed.

Appellant asserts that "all the facts contained in the hypotheses may be admitted as true, and yet they form not the slightest basis for the conclusions reached," and we think that there is substantial merit to this contention. But, notwithstanding the obvious deficiency of the hypothetical question as submitted, we think that there is no question whatever but that the findings of the doctor as to respondent's physical condition, which were in evidence, together with the facts hypothesized in the question constituted an adequate factual basis for the answer in the form of an opinion of an expert, and it is obvious from the answer that the doctor did take all those facts into consideration when he expressed his opinion. Therefore, after the answer had been given without objection, it was not then subject to being stricken out on the basis that it was not supported by the substantial facts, which was the only relief sought by appellant at the trial.

In the course of the oral argument counsel for plaintiff was discussing the injury to and condition of plaintiff's neck, and he made the following statement: "You heard Dr. Schaerer testify as to what his findings were. He would not touch that cervical disc until this man gets—the pain gets so bad that he can't stand it because it is a painful operation, Dr. Lembeck notwithstanding. That is an operation that individuals will not undergo unless they have to undergo it." Counsel for appellant objected because "Dr. Schaerer didn't discuss that at all. He said that the neck was causing him no particular injury and that's all he said and he quit." This objection was overruled with the comments that "the jury will remember the evidence" and that counsel for appellant "can take care of that in your argument." Appellant admits that "under different circumstances" the error might not be held reversible, but it asserts that "in view of the gross excessiveness of the verdict" it was prejudicial in this case. We think the argument either was or was not prejudicially erroneous regardless of the amount of the verdict.

Dr. Schaerer testified that on June 24, 1961 a discogram was performed at the level of the discs between the fifth and sixth and between the sixth and seventh cervical

vertebrae. It was the doctor's conclusion from this and other tests that "In the cervical area * * * there was a disc injury at the level of C–5–6" and that an X ray disclosed that "this disc," the one between the fifth or sixth vertebrae, "is bulging into the spinal canal, due to a posterior tear in the disc." The doctor later referred to this as a "ruptured disc at C–5–6." He testified that in the course of treatment and after bed rest these conditions "improved to the point where they were not incapacitating and I felt that nothing had to be done at this time about his neck." The doctor described in considerable detail the method and procedure of performing a surgical operation to correct a disc injury. We need not detail this testimony, but it is sufficient to say that it justified the inference that it would be a painful operation and that one would not willingly undergo such an operation except when necessary.

Appellant relies on Holmes v. Terminal R. R. Ass'n of St. Louis, 363 Mo. 117C, 257 S.W.2d 922. In that case "There was no substantial evidence of a disc injury," and it was held that an objection was improperly overruled to argument wherein it was stated that " 'There is something wrong there, something is wrong with the man's back * * *. If he has a disc injury to his back it is a serious thing, and if that little nerve is pinched in there it will cause suffering.' " Appellant also relies on Watkins v. West, Mo.App., 297 S.W.2d 568. In that case argument concerning injury to plaintiff's autonomic nervous system was held improper because there was no evidence of such injury. In the case before us there was substantial evidence of injury to a cervical disc, and as previously noted the evidence justified the inference that a surgical operation was painful and of the nature that one would undergo only with reluctance. Counsel is allowed wide latitude in discussing the facts and arguing inferences from the evidence even though the inferences drawn may be considered to be illogical or erroneous. Eickmann v. St. Louis Public Service Company, Mo., 323 S. W.2d 802; Meirotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161, 167. The argument consisted of a proper inference from the evidence, and there was no error in overruling the objection.

Appellant's final assignment is that the verdict is excessive. In addition to the facts concerning his injuries, as previously outlined, respondent was 44 years of age at time of trial. He had hospital bills totaling $1,933.19 and doctor bills in the amount of $1,700. His loss of wages at the time of trial, based upon what he was receiving at the time of injury, was approximately $11,000. Dr. Schaerer expressed the opinion that respondent could not at time of trial perform the work of a locomotive engineer and that there would be no further improvement, but respondent is by no means totally incapacitated. At the time of his last examination, according to Dr. Schaerer, respondent had "some neck discomfort" which was "not of any severe nature," he was "walking without limping," could "walk on heels and tiptoes," he could bend forward to a point where he touched the lower third of his shin bone with his finger tips, and while Dr. Schaerer said that from the laminectomy there had been "less than ideal results," and "lumbo sacro mid-line scar was well healed and non-tender." Muscle measurements of the lower extremities did not show any significant difference in circumstances, but he had some diminished sensation to pin prick in one foot and in a strip-like area extending up the legs, and he had no right Achilles reflex.

Previous disc injury cases in this court since 1950, and the results on appeal concerning damages, are as follows: Hayes v. Wabash R. Co., 360 Mo. 1223, 233 S.W.2d 12. A judgment of $40,000 previously reduced by the trial court from a verdict of $45,000 was further reduced to $37,500. Pinter v. Gulf, Mobile & Ohio R. Co., 362 Mo. 887, 245 S.W.2d 88. A verdict of $45,000 had been reduced by the trial court and this court refused to enforce a further remittitur. Rogers v. Thompson, Mo., 308

S.W.2d 688. A verdict of $40,000 was not reduced by remittitur. Van Norman v. Illinois Central Railroad Company, Mo., 320 S.W.2d 512. A verdict for $62,400 was reduced to $47,400. Greco v. Hendricks, Mo., 327 S.W.2d 241. The plaintiff refused to remit $12,000 from a $32,000 verdict and this court held that there was no abuse of discretion in granting a new trial on the ground that $32,000 was excessive. Kelly v. Kansas City Public Service Co., Mo., 335 S.W.2d 159. A verdict of $36,000 was held not excessive. Chambers v. Missouri Pacific Railroad Company, Mo., 356 S.W.2d 64. A verdict of $38,000 was not reduced by remittitur.

We see no occasion to restate the applicable rules concerning the use of remittiturs in this state. See Myers v. Karchmer, Mo., 313 S.W.2d 697; Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487; Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14. While it has correctly been said that there is no accurate scale for measuring the money value of the damages sustained, Van Campen v. St. Louis-San Francisco Ry. Co., 358 Mo. 655, 216 S.W.2d 443, 449, upon con-

sideration of all the facts of this case previously outlined, and upon comparison of the verdict and injuries in this case to those in the cited cases, and others with injuries of a different nature including Marquardt v. Kansas City Southern Railway Co., Mo., 358 S.W.2d 49; Donahoo v. Illinois Terminal Railroad Company, Mo., 300 S.W.2d 461; Wehrli v. Wabash Railroad Company, Mo., 315 S.W.2d 765, certiorari denied 358 U.S. 932, 79 S.Ct. 321, 3 L.Ed.2d 304, we are constrained to hold that the judgment is excessive to the extent of $36,000.

If respondent will remit the amount of $36,000 within 15 days, the judgment will be affirmed as of the date of its rendition for $50,000; otherwise it will be reversed and the cause remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.